UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| BERNARD VON NOTHAUS, individually<br>and d/b/a LIBERTY DOLLAR<br><br>        Plaintiff,<br><br>                v.<br><br><br>HENRY M. PAULSON, JR, Secretary of the<br>Treasury, EDMOND C. MOY, Director, United<br>States Mint,[1]<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)  Cause No. 3:07-cv-038-RLY-WGH<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**BRIEF IN SUPPORT OF THE DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT, OR IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

**STATEMENT OF THE CASE**

Plaintiff Bernard von NotHaus individually and d/b/a Liberty Dollar ("von NotHaus")

has supervised the production and marketing of silver and gold "Liberty Dollars" through the

National Organization for the Repeal of the Federal Reserve Act and the Internal Revenue Code

("NORFED, Inc.") for over eight years.  In his original Complaint, von NotHaus asked this

Court to (1) find that the use of the Liberty Dollar as currency is not a crime that may be

prosecuted under 18 U.S.C. § 486,[2] (2) constrain the Department of Justice from bringing

---

[1]In his Amended Complaint, the Plaintiff has dropped any claims against the Attorney
General of the United States of America; thus the Attorney General is no longer a party to this
action.

[2]As argued in the Defendants' First Motion to Dismiss, it is best left to the prosecutorial
authorities and the criminal justice system to decide whether a criminal act has occurred based
upon the individual facts and circumstances of each case.  The Defendants specifically reserve
the right to file additional dispositive motions in this case.

criminal charges against him, and (3) prevent the United States Department of the Treasury and the United States Mint from informing consumers that the Liberty Dollar is not legal tender and that use of the Liberty Dollar as circulating money is a Federal crime.

Unable to show any jurisdictional basis for these claims, von NotHaus has amended his Complaint to abandon his claims against the Attorney General of the United States and no longer names the Attorney General as a Defendant.  (Amended Complaint ¶¶ 2, 3.)  However, he still seeks to use this Court to prevent the Department of the Treasury and the United States Mint from informing consumers that the Liberty Dollar is not legal tender and that use of Liberty Dollars as circulating money is a Federal crime.  Toward this end, von NotHaus now claims that the United States Mint's issuance of a Consumer Alert about the Liberty Dollar (both in electronic and written form) was an arbitrary final action reviewable under the Administrative Procedures Act ("APA"), 5 U.S.C. § 702; that the Alert was an action "*ultra vires* and outside its jurisdictional limits;" and that he has been deprived "of due process under the Fourteenth Amendment of the U.S. Constitution."[3]  (Amended Complaint ¶ 14.)  An examination of von NotHaus's Amended Complaint shows that it fairs no better than his original Complaint; this Court still lacks jurisdiction over his claims and von NotHaus still has failed to state a claim upon which relief can be granted.  Accordingly, the Defendants respectfully request this Court

---

[3]To the extent, von NotHaus is seeking to obtain declaratory or injunctive relief for unnamed "others" in his action, he cannot.  As noted by the Seventh Circuit, federal courts cannot use their injunctive power "just for the common weal or on behalf of those who, although not parties, are currently or may be in the future burdened by the defendant's allegedly illegal conduct."  *Mazanec v. N. Judson-San Pierre Sch. Corp.*, 798 F.2d 230, 234 (7th Cir. 1986).

dismiss von NotHaus's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or grant summary judgment pursuant to Federal Rule of Civil Procedure 56.

## BACKGROUND

Von NotHaus has supervised the production and marketing of the Liberty Dollar through NORFED, Inc., for a number of years.  Liberty Dollars are gold and silver medallions that bear the inscriptions "Liberty," Dollars," "Trust in God," "USA," and depict images that are similar to those on United States coins.  (Amended Complaint ¶¶ 7, 12; Exhibit 1.)

According to von NotHaus, Liberty Dollars are a "private voluntary barter currency,"[4] which may be offered to merchants as payment for goods and services.  (Amended Complaint ¶¶ 7, 12.)  He further alleges that he is not using Liberty Dollars as circulating money, and consequently, he is not violating the criminal statute 18 U.S.C. § 486.[5]  (*See, e.g.*, Amended Complaint ¶ 12 ("Thus, the use of a gold or silver Liberty "medallion" as a "private voluntary barter currency" does not violate 18 U.S.C. §486."); ¶ 8 ("The Liberty Dollar . . . has not been represented as "legal tender", "coin" or "current money" in these United States."); ¶ 12 ("Plaintiff von NotHaus . . . [has] not represented the Liberty Dollar as 'coin', 'legal tender' or 'current money'.")).

---

[4]A "private voluntary barter currency" is not defined in the United States Code.

[5]Title 18, United States Code, § 486 provides that:

[w]hoever, except as authorized by law, makes or utters or passes, or attempts to utter or pass, any coins of gold or silver or other metals, intended for use as current money, whether in the resemblance of coins of the United States or of foreign countries, or of original design, shall be fined under this title or imprisoned not more than five years, or both.

Von NotHaus alleges that in 2006, the United States Mint issued an electronic Consumer Alert on its website and a written Consumer Alert to NORFED "Regional Currency Officers" advising consumers that Liberty Dollars are not legal tender and are privately produced products, and that Department of Justice prosecutors have concluded that use of Liberty Dollars as current money in order to limit reliance on, and to compete with the circulating coinage of the United States, violates 18 U.S.C. § 486.  (Amended Complaint ¶¶ 9, 10; Exhibits 1, 2.)  The written Consumer Alert directed the recipients to the United States Mint's Consumer Alert webpage for more information.  (Amended Complaint, Exhibit 2.)

Von NotHaus disagrees with the Department of Justice's "determination," and contends that the United States Mint's Consumer Alert contained incorrect information.

## ARGUMENT

I.   **Standard for Dismissal and Jurisdiction**

When considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the "district court must accept as true all well-pled factual allegations and draw reasonable inferences in favor of the plaintiff."  *Rueth v. United States Envt'l. Prot. Agency*, 13 F.3d 227, 229 (7th Cir. 1993) (quoting *Capital Leasing Co. v. Fed. Deposit Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)).  However, where the defendant raises factual questions concerning jurisdiction, the court need not accept the allegations of the complaint as true, but may look behind the complaint and view the evidence to determine whether a controversy in fact exists.  *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980).  Von NotHaus has the burden of supporting the jurisdictional allegations of his Complaint by competent proof.  *Id.*  In deciding whether von NotHaus has carried this burden,

the Court must look to the state of affairs as of the filing of the Complaint.  *Id.*  As the party

asserting federal jurisdiction, von NotHaus bears the burden to show that the United States has

waived its sovereign immunity with respect to his claims.  *United Phosphorus, Ltd. v. Angus*

*Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003); Fed. R. Civ. P. 12(b)(1).

   To survive a motion to dismiss based upon a failure to state a claim under Federal Rule of

Civil Procedure 12(b)(6), a plaintiff's complaint must "provide the 'grounds' of his

'entitle[ment] to relief'" based upon more than "labels and conclusions, and a formulaic

recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127

S. Ct. 1955, 1964-65 (2007).  The complaint's "[f]actual allegations must be enough to raise a

right to relief above the speculative level." *Id.*  "'The pleading must contain something more . . .

than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of

action', on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Id.* (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36

(3d ed. 2004) (internal citations omitted)).

   On summary judgment, a court is to construe all facts and reasonable inferences in the

light most favorable to the non-moving party. *Brown v. Ill. Dep't of Natural Resources*, 499

F.3d 675, 680 (7th Cir. 2007).  Summary judgment is proper if "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issues as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(e)).

   To maintain a viable claim against the United States or its agencies, a plaintiff carries the

burden to show that the court has jurisdiction over his claims.  "The United States, as sovereign,

is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584,

586 (1941). Indeed, "the terms of its consent to be sued in any court define that court's

jurisdiction to entertain the suit." *Id.* "If the Government does waive its sovereign immunity, it

alone dictates the terms and conditions on which it may be sued." *Macklin v. United States of*

*America*, 300 F.3d 814, 820 (7th Cir. 2002). Further, "[a] suit against federal officers in their

official capacity . . . is a suit against the United States." *Del Raine v. Carlson*, 826 F.2d 698, 703

(7th Cir. 1987).

> To maintain a viable claim against the United States in federal court, a party must
> satisfy two requirements. In particular, the plaintiff not only must identify a
> statute that confers subject matter jurisdiction on the district court but also a
> federal law that waives the sovereign immunity of the United States to the cause
> of action.

*Macklin*, 826 F.2d at 819; *see also Clark v. United States*, 326 F.3d 911, 912 (7th Cir. 2003).

"Failure to satisfy either requirement mandates the dismissal of the plaintiff's claim." *Macklin*,

826 F.2d at 819. "Absent a waiver, sovereign immunity shields the federal government and its

agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994).

In his Amended Complaint, von NotHaus claims that jurisdiction is based upon 28 U.S.C.

§ 2201 (the Declaratory Judgment Act); Rule 57 of the Federal Rules of Civil Procedure

(Declaratory Judgment Rule); 28 U.S.C. § 1331 (federal question jurisdiction), and 7 U.S.C. §

702 (APA). (Amended Complaint ¶ 4.)

The Declaratory Judgment Act is not an independent source of federal jurisdiction;

rather, "jurisdiction must be predicated on some other statute." *See Rueth,* 13 F.3d at 231

(refusing to grant declaratory judgment where jurisdiction in not predicated on some other

statute); *Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Likewise, while the APA contains a

waiver of sovereign immunity, it does not contain a specific jurisdictional grant. *Califano v.*

*Sanders*, 430 U.S. 99, 106-107 (1977).  Moreover, 28 U.S.C. § 1331 is not a waiver of sovereign immunity.  *Beale v. Blount*, 461 F.2d 1133, 1138 (5th Cir. 1972).  Where the United States has not consented to be sued, the court lacks subject matter jurisdiction and the action must be dismissed.  *Meyer*, 510 U.S. at 475.  As discussed below, von NotHaus has failed to carry his burden to show jurisdiction or state a cause of action, and his Amended Complaint must be dismissed for any one of the following reasons.[6]

## II.     Von NotHaus Fails to State a Claim Under the APA

Von NotHaus objects to the United States Mint issuing a Consumer Alert in electronic format on its website and in written format by letter in response to inquiries it received from the general public about the Liberty Dollars.  He claims that this Court has jurisdiction over his claims based on the APA.  The APA waives the government's sovereign immunity with respect

---

[6]Von NotHaus's request for injunctive relief must also be dismissed.  "A preliminary injunction is an extraordinary and drastic remedy that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  It can be granted only if the plaintiff establishes the following four elements: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) he will suffer irreparable harm which, absent injunctive relief outweighs the irreparable harm the respondent will suffer if the injunction is granted; and (4) that the injunction will not harm the public interest."  *Goodman v. Illinois Dep't of Fin. and Prof'l Regulation*, 430 F.3d 432, 437 (7th Cir. 2005).  The showing is even greater when a mandatory permanent injunction is sought. A clear or substantial showing of a likelihood of success is required where the injunction sought will alter, rather than maintain, the status quo–that is, where the injunction is properly characterized as mandatory rather than prohibitory.  The standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits.  *See, e.g., Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981).  Von NotHaus's request for injunctive relief fails for the same reasons as his request for declaratory judgment.

to actions to review agency actions.  5 U.S.C. § 702.  Reviewable actions within the scope of the

APA include rules, orders, licenses, sanctions, relief, "or the equivalent or denial thereof."  5

U.S.C. § 551(13).

Generally, there are two possible avenues for judicial review of federal agency action: (1)

a substantive statute may provide a private right of action for judicial review of an agency action

or (2) the provisions of the APA may provide for judicial review.  *Regional Mgmt. Corp. Inc. v.*

*Legal Serv. Corp.*, 186 F.3d 457, 461 (4th Cir. 1999).  Thus, such actions must be final or

otherwise made reviewable by statute.  5 U.S.C. § 704.

In this case, von NotHaus does not claim that judicial review exists under a substantive

statute.  He claims that "the announcement of the US Mint on its website and its subsequent

letters to the Plaintiff and others constitutes an agency action" that "should be treated as a final

agency action . . .."  (Amended Complaint ¶ 13.)  However, it is well established that an

agency's reports and other statements lacking the force and effect of law do not constitute final

agency action within the meaning of the APA.  With regards to a final agency action, the "core

question is whether the agency has completed its decisionmaking process, and whether the result

of that process is one that will directly affect the parties."  *Franklin*, 505 U.S. at 797.  Here, the

Consumer Alert contained on the United States Mint's website and in the disputed letter are

simply information provided consumers that do not carry the status of law.  In fact, the

Consumer Alert did not directly affect von NotHaus in that no legal consequences flowed from

the Alert.  At most, the Alert merely gave consumers additional information with which to make

decisions regarding the use of Liberty Dollars.  Indeed, von NotHaus was free to provide more

information to the public concerning the Liberty Dollars.

Because the Alert does not have the force and effect of law necessary to constitute a "final agency decision" under 5 U.S.C. § 702, this Court lacks jurisdiction over von NotHaus's claims under the APA.  *See Lujan*, 497 U.S. at 882, 890, 894 (discussing principle of "final agency action" under APA); *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1980); *Franklin v. Massachusetts*, 505 U.S. 788, 798 (1992) (agency report that carried "no direct consequences" was not "final agency action"); *see also, e.g., Center for Biological Diversity v. Veneman*, 335 F.3d at 853 ("final agency action" must have "an actual or immediate threatened effect," "must mark the 'consummation' of the agency's decision-making process, and must 'be one by which rights or obligations have been determined, or from which legal consequences will flow'") (citations omitted); *Nippon Miniature Bearing Corp. v. Weise*, 230 F.3d 1131, 1137 (9th Cir. 2000) ("final agency action" must have "legal consequences"); *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999) (no "final agency action" where "legal consequences d[id] not necessarily flow" from agency's action, "nor d[id] rights or obligations arise from it"); *Mt. Adams Veneer Co. v. United States*, 896 F.3d 852, 861 (4th Cir. 2002) ("if we were to adopt the position that agency actions producing only pressures on third parties were reviewable under the APA, then almost any agency policy or publication issued by the government would be subject to judicial review . . ..  We do not think that Congress intended to create private rights of actions to challenge the inevitable objectionable impressions created whenever controversial research by a federal agency is published.").

**III.    Even if the Consumer Alert Is a Final Agency Action, It is Not Reviewable Because Von NotHaus Has Failed to Exhaust His Administrative Remedies**

Von NotHaus's claim that this Court has jurisdiction over his claim under the APA

because there is "no administrative review" "available to the Plaintiff" is also without merit. (Amended Complaint ¶ 13.)  "It is well established that declaratory judgment jurisdiction is discretionary; even where a justiciable controversy has been shown to exist, federal courts have discretion to decline to exercise their jurisdiction."  *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980).  Among the factors to be considered is "'where there is an alternative remedy that is better or more effective.'"  *Nucor Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994) (quoting *Nationwide Mut. Fire Ins. Co. v. Willenbrink*, 924 F.2d 104, 106 (6th Cir. 1991); *see also* 5 U.S.C. § 704.

In this case, the United States Mint has established an administrative petition and review mechanism by which individuals may seek and obtain correction of information maintained and disseminated by the United States Mint pursuant to the requirements of the Information Quality Act.  *See* Information Quality at the United States Mint, http://usmint.gov/about_the_mint/infoQual.  (Affidavit at ¶ 2; Pub. L. No. 106-554, § 515, 116 Stat. 2763 (2000).)  These guidelines provide for both an initial petition and an administrative appeal. (*Id*. at ¶ 2.)  Entities that wish to challenge information disseminated by the United States Mint are asked to submit a written request by letter or email to the Product Assurance Division Chief, Information Quality, and include identification information and a description of the information to be corrected, as well as the corrective action they believe to be necessary and why.  (*Id*. at ¶ 3.)  Based on a review of the information provided, the United States Mint will determine whether a correction is warranted and if so, the corrective action to take.  (*Id*. at ¶ 4.) The United States Mint will respond to the requestor by letter or e-mail.  (*Id*.)  The United States Mint will explain the findings of review and the actions that the agency will take, if any.  (*Id*.)

The response will consider the nature and timeliness of the information involved and such factors as the significance of the correction on the use of the information and the scope of the correction.  (*Id*.)  The United States Mint will endeavor to respond to all requests for correction within seven working days.  (*Id*.)  If the request requires more than seven working days to resolve, the United States Mint will inform the complainant that more time is required and provide an estimated decision date.  (*Id*.)

If the entity submitting the complaint does not agree with the United States Mint's decision (including the corrective action), the complainant may appeal the decision within 30 calendar days of receiving notification of the denial.  (*Id*. at ¶ 5.)  The United States Mint will respond to the request for reconsideration within 45 days of the requested reconsideration.  (*Id*.)  The response will include the decision, and, if applicable, will explain the correction that will be implemented and a time frame for implementation.  (*Id*.)  Despite von NotHaus's claim that the information contained in the Consumer Alert is incorrect, von NotHaus has failed to exhaust his administrative remedies by taking part in any step of this review process.  (*Id*. at ¶ 6.)  Therefore, his claims should be dismissed.

Beyond this, even if von NotHaus seeks to exhaust his administrative remedies now, the Information Quality Act does not subject agency Information Quality Act decisions to judicial review.  *See Salt Institute v. Leavitt,* 440 F.3d 156, 159 (4th Cir. 2006) (affirming the district court's dismissal of the suit stating that "the IQA . . . does not create any legal right to information or its correctness."); *Salt Institute v. Thompson*, 345 F. Supp. 2d 589, 601 (E.D. Va. 2004) ("[t]he language of the IQA reflects Congress's intent that any challenges to the quality of information disseminated by federal agencies should take place in administrative proceedings

before federal agencies and not in the courts."); *In re Operation of the Missouri River Sys. Litigation*, 363 F. Supp. 2d 1145, 1174 (D. Minn. 2004), *vacated in part and aff'd in part on other grounds*, 421 F.3d 618 (8th Cir. 2005) (dismissing the suit due to lack of a right to judicial review); *see also, Americans for Safe Access v. United States Dep't of Health and Human Serv.*, 2007 WL 2141289 (N.D. Cal. July 24, 2007).  As such, von NotHaus is not entitled to either declaratory or injunctive relief under the APA and his claims must be dismissed.

**IV.  This Court Does Not Have Jurisdiction Over Von NotHaus's "*Ultra Vires*" and Fourteen Amendment Claims and They Must Be Dismissed**

Von NotHaus also asks this Court to declare that the "action of the US Mint in declaring the use of the gold and silver Liberty Dollar is a Federal crime is *ultra vires* and the US Mint has no authority to make such a declaration."  (Amended Complaint ¶ 17(a).)  He further contends "that the U.S. Mint has no authority to publicly disclose that the manufacture and distribution of the Liberty Dollar medallions by the Plaintiff and other persons who receive the medallions is in violation of 18 U.S.C. § 486."  (*Id.*, ¶ 17(b).)  Finally, von NotHaus complains that the United State Mint's "*ultra vires* actions" violated his Fourteenth Amendments rights.   (*Id.*, ¶ 17(c).)

Initially, it must be noted that while von NotHaus consistently alleges in his Amended Complaint that the *United States Mint* declared "the use of the gold and silver Liberty Dollar is a Federal crime," his supporting facts show that the United States Mint merely warned consumers that the *Department of Justice* had determined that use of the Liberty Dollars "as circulating money is a Federal crime." As such, it was not the Department of the Treasury or the United States Mint that declared "the use of the gold and silver Liberty Dollar is a Federal crime."  A "complainant can plead himself out of court by pleading facts that undermine the allegations set forth in his complaint."  *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999).  Because von

NotHaus's facts do not support his allegation that the United States Mint undertook the actions about which he complained, von NotHaus cannot state a claim upon which relief can be granted.

Von NotHaus also claims that the "US Mint has no known statutory or other authority to declare a person in violation of a Federal criminal statute and is therefore acting *ultra vires* and outside its jurisdictional limits" when it issued its Consumer Alert.  (Amended Complaint ¶ 10.) As discussed above, the facts presented by von NotHaus do not support his allegation that the United States Mint "declare[d] a person in violation of a Federal criminal statute."  Beyond this, the Department of the Treasury, of which the United States Mint is a bureau,  has broad authority under its enabling statutes to take actions in support of its coin minting and numismatic marketing missions.  *See, e.g.,* 31 U.S.C. §§ 5111, 5112, 5134, and 5136.  It is von NotHaus's burden to support his jurisdictional allegations by competent proof.  *Int'l Harvester Co.*, 623 F.2d at 1210.  Because he cannot do so, his claims must be dismissed for lack of jurisdiction.

Finally, this Court has no jurisdiction over von NotHaus's claim that he has been deprived of "due process under the Fourteenth Amendment of the U.S. Constitution."  (Amended Complaint ¶ 14.)  It is well settled that the Fourteenth Amendment does not apply to the federal government and thus cannot provide a basis for suit against the Defendants.  *See, e.g., San Francisco Arts & Athletics, Inc. v. United States Olympic Comm.*, 483 U.S. 522, 542 (1987); *Simpson v. United States*, 342 F.2d 643, 646 n.1 (7th Cir. 1965).

## V.  Von NotHaus Has No Standing and His Complaint Must Be Dismissed

Finally, the party "asserting federal jurisdiction" must "carry the burden of establishing [its] standing under Article III."  *Daimler Chrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1861 (2006). Here, von NotHaus's claims fail because he cannot show an actual controversy.

The Declaratory Judgment Act provides: "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The statutory requirement of an "actual controversy" is merely a recognition that the federal judicial power is restricted under the Constitution to cases and controversies. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227 (1937); *Budget Rent A Car Corp. v. Miljack, Inc.*, 760 F. Supp. 135 (N.D. Ill. 1991); *see also Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (requiring the existence of a "case or controversy" in case requesting injunctive relief.) If von NotHaus does not satisfy the requirement, this Court is without jurisdiction of the claim.

The "case or controversy" clause of Article III of the Constitution imposes a minimal constitutional standing requirement on all litigants attempting to bring suit in federal court. To invoke the Court's jurisdiction, von NotHaus must demonstrate, at an "irreducible minimum," that: (1) he has suffered a distinct and palpable injury as a result of the putatively illegal conduct of the United States; (2) the injury is fairly traceable to the challenged conduct; and (3) it is likely to be redressed if the requested relief is granted. *See Valley Forge Christian Col. v. Am. United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982); *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99 (1979); *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976); *Heartwood, Inc. v. United States Forest Serv.*, 230 F.3d 947, 951 (7th Cir. 2000). In addition to the constitutional requirements of Article III, courts have developed a set of prudential considerations to limit standing in federal court to prevent a plaintiff "from adjudicating 'abstract questions of wide public significance' which amount to 'generalized

grievances' pervasively shared and most appropriately addressed in the representative branches." *See Valley Forge*, 454 U.S. at 474-75 (quoting *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975)). Speculative claims that a proposed governmental action may result in injury to a plaintiff are insufficient to confer standing. *See O'Shea v. Littleton*, 414 U.S. 488, 497 (1974). The required injury must be both real and immediate, not conjectural or hypothetical. *See Golden v. Zwickler*, 394 U.S. 103, 109-10 (1969).

In this case, von NotHaus contends that he has standing to bring this suit in that "he is directly affected and threatened by the adverse actions of the Defendants" (Amended Complaint ¶ 5), because he "fear[s] imminent criminal prosecution by the Justice Department if they continue the use of Liberty Dollars." (Amended Complaint ¶ 16.) However, the Department of the Treasury and the United States Mint do not bring criminal charges and prosecute individuals. Von NotHaus has dropped all claims against the Justice Department in his Amended Complaint. It is disingenuous and without factual support for von NotHaus to claim that he fears prosecution by the Department of the Treasury and the United States Mint. As such, von NotHaus cannot show an "actual controversy" so as to demonstrate standing to bring his action.

Further, fear of possible future application of a federal criminal statute does not necessarily confer standing in a declaratory judgment action. *See Adult Video Ass'n v. United States Dep't of Justice*, 71 F.3d 563, 565-67 (6th Cir. 1995); *see also Crooker v. Magaw*, 41 F. Supp. 2d 87, 91 (D. Mass. 1999). *But see Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298-99 (1979). The mere existence of a statute, which may or may not ever be applied to von NotHaus, is not sufficient to create a case or controversy within the meaning of Article III. *Crooker*, 41 F. Supp. 2d at 91 (quoting *Stoianoff v. Montana*, 695 F.2d 1214, 1223 (9th Cir.

15

1983)).  Even where a plaintiff has been informed that certain actions could subject him to federal prosecution, courts have held that this threat of prosecution was still too speculative to confer standing.  *Nat'l Rifle Ass'n v. Magaw*, 132 F.3d 272, 293-94 (6th Cir. 1997).

## CONCLUSION

For the reasons stated above, this Court should grant the United States' motion to dismiss, or in the alternative, for summary judgment, on all von NotHaus's claims for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

Respectfully submitted,

TIMOTHY M. MORRISON
Acting United States Attorney

By:   */s Debra G. Richards*
Debra G. Richards
Assistant United States Attorney

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2007, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

James E. Burk
BURK & REEDY, LLP
jburk@burkreedy.com

James D. Johnson
Rudolph, Fine, Porter & Johnson, LLP
jdj@rfpj.com

_s/ Debra G. Richards_

Debra G. Richards

Assistant United States Attorney

Office of the U.S. Attorney
10 West Market Street, Suite 2100
Indianapolis, IN 46204
317-226-6333